IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WINDBER HOSPITAL d/b/a CHAN SOON
SHIONG MEDICAL CENTER, on behalf of
itself and all others similarly situated,

        *Plaintiff*,

     v.

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

       *Defendant*.

Case No. 3:20-CV-00080-KRG

## DEFENDANT TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

## I.    INTRODUCTION

The COVID-19 pandemic has affected the public and most businesses throughout the country in unprecedented ways. But these challenging and unfortunate circumstances do not create insurance coverage for losses that fall outside the terms of a policyholder's insurance contract.

In this putative statewide class action lawsuit, Plaintiff Windber Hospital d/b/a Chan Soon Shiong Medical Center ("Plaintiff" or "Windber") asks this Court to declare that it, and putative class members it seeks to represent, are entitled to insurance coverage for claimed business income and extra expense losses allegedly caused by orders issued by Pennsylvania Governor Tom Wolf and the Pennsylvania Department of Health to combat the spread of

COVID-19 (the "Orders").[1] Plaintiff also seeks an injunction prohibiting Travelers Property

Casualty Company of America ("Travelers") from continuing to deny coverage for Plaintiff's

claim and those of putative class members. But Plaintiff ignores the material terms of its

Travelers insurance policy (the "Policy")—foremost among them an explicit exclusion for *any*

"loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium, or other

microorganism that induces or is capable of inducing physical distress, illness or disease."

Policy, Doc. 1-2, at 38.[2]

The case-dispositive virus exclusion is not the only reason Plaintiff's Complaint fails as a

matter of law. Rather, Plaintiff has not pleaded (and cannot plead) the facts necessary to establish

that it is entitled to Civil Authority, Business Income, Extra Expense, or any other type of

coverage under the Policy.

As to coverage under the Civil Authority provision, the Policy requires "damage to

property other than property at [Plaintiff's] premises." Doc. 1-2, at 58. It also requires that

Plaintiff's premises be "not more than 100 miles from the damaged property" and that "[a]ccess

to the area immediately surrounding the damaged property [be] prohibited by civil authority as a

result of the damage . . . ." *Id.* at 58-59. In addition, the Policy requires that the damage that gave

rise to the access prohibition be the result of "a Covered Cause of Loss." *Id.* at 58. Plaintiff has

---

[1] Other similar COVID-19-related suits seeking coverage for business income losses are pending
in various other federal and state courts across the country. Two motions for transfer and
coordination or consolidation under 28 U.S.C. § 1407 have been filed with the Judicial Panel on
Multidistrict Litigation ("JPML") in *In re: COVID-19 Business Interruption Protection
Insurance Litigation*, MDL No. 2942. Travelers, along with numerous other defendants and
some of the plaintiffs, has opposed the motions for transfer and coordination or consolidation.
The JPML hearing on the motions is scheduled for July 30, 2020.

[2] The Policy is an exhibit to the Complaint, and is cited herein by reference to the CM/ECF
document number (Doc. 1-2) and page number. A certified copy of the Policy is also attached to
Travelers' Answer as Exhibit 1 thereto.

not alleged facts that satisfy *any* of these express prerequisites for Civil Authority coverage. There is no allegation of damage to property, or a prohibition of access to an area surrounding damaged property. Moreover, Plaintiff alleges—and the Orders reflect—that the Orders were issued for purposes of "social distancing" and to slow the spread of COVID-19.

As to the Business Income and Extra Expense coverages, the Policy requires "direct physical loss of or damage to property" at the insured premises, and the loss or damage "must be caused by or result from a Covered Cause of Loss." Doc. 1-2, at 57. Plaintiff has not alleged facts that satisfy these express prerequisites for Business Income and Extra Expense coverages. To the contrary, Plaintiff alleges only a "heightened risk of contamination" or "risk of contamination" by the COVID-19 virus at its premises. Compl. ¶¶ 24, 27.[3]

And, again, even if Plaintiff could have pleaded the factual requirements for coverage, Plaintiff's claim for Business Income, Extra Expense and Civil Authority losses—which result from the Coronavirus—would still be *expressly excluded* by the virus exclusion.

As to the passing references in the Complaint to "contamination" coverage, which presumably refer to an endorsement to the Policy entitled "Ordinance or Law—Communicable Disease Contamination Coverage," that endorsement is expressly not applicable to any loss of income or extra expense. While the endorsement provides limited coverage for additional costs incurred to cleanup and remove "communicable disease" from contaminated covered property when required by an ordinance or law (as set forth therein), Plaintiff has not alleged any facts that would establish that any such contamination occurred, that any cleanup was required by an ordinance or law, or that any additional costs within the scope of this endorsement were incurred.

---

[3] Even the presence of the virus would not constitute the requisite "direct physical loss of or damage to property at [Plaintiff's] premises . . . ." Doc. 1-2, at 57. *See* fn. 12.

Judgment on the pleadings should be granted in favor of Travelers because, as a matter of law, Plaintiff cannot plead an entitlement to any coverage under its contract with Travelers. Plaintiff's attempt to assert claims on behalf of a putative class fails because Plaintiff has no cause of action.

## II.    PROCEDURAL HISTORY AND ALLEGED FACTS

### A.    This Lawsuit

Plaintiff owns and operates Chan Soon-Shiong Medical Center in Windber, Johnstown and Portage, Pennsylvania. Compl. ¶ 4. Plaintiff commenced this action against Travelers on April 23, 2020. Plaintiff alleges that the Policy insures "losses caused by COVID-19 virus," "the Coronavirus Pandemic," and associated governmental orders, under provisions for "business income, extra expense, contamination, civil authority and other applicable coverages[.]" Compl. ¶¶ 1, 2, 14, 25, 33, 35, 36, 39, 72. The Policy is attached as Exhibit 1 to the Complaint. *See* Doc. 1-2.[4]

According to the Complaint, on March 19, Governor Wolf issued "an Order requiring all non-life-sustaining businesses in the Commonwealth to cease operation and to close all physical locations." Compl. ¶ 19. The Complaint further alleges that, on March 23, 2020, Governor Wolf

---

[4] The Court may properly consider the Policy, which is attached as an exhibit to the Complaint, and as an exhibit to Travelers' answer, on this motion. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) ("[I]n deciding a motion for judgment on the pleadings, a court may only consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.") (internal quotations and citation omitted); *see also Ackah v. Hershey Foods Corp.*, 236 F. Supp. 2d 440, 443 (M.D. Pa. 2002) (exhibits to answer may be considered on motion for judgment on the pleadings).

and the Pennsylvania Department of Health issued "Stay at Home" orders, and that the Department of Health explained that the "operation of non-life-sustaining businesses present the opportunity for unnecessary gatherings, personal contact and interaction that will increase the risk of transmission and the risk of community spread of COVID-19." *Id.* ¶ 21. Plaintiff maintains that "[a]s a result of the impact of the COVID-19 virus and the referenced Orders of the Governor, Plaintiff, Medical Center, has been ordered to close its business and forced to furlough employees, thereby incurring loss." *Id.* ¶ 25. Plaintiff alleges that its premises pose "a heightened risk of contamination by the COVID-19 virus," *id.* ¶ 24, but does not allege that the virus has in fact been found in, let alone contaminated, its premises.

Plaintiff seeks coverage for "losses *caused by the COVID-19 virus* and the referenced Orders," including business income and extra expense losses, and also seeks coverage under the Policy's Civil Authority provision. Compl. ¶¶ 31, 32, 35, 36 (emphasis added). The Complaint pleads two counts. Count I seeks declaratory relief, requesting "a declaration that [Plaintiff] is entitled to coverage for losses *caused by the COVID-19 virus* and the referenced Orders." *Id.*, Count I, ¶ 72 (emphasis added). Count II seeks injunctive relief, requesting that Travelers "be enjoined from continuing to deny and/or refuse to acknowledge coverage to insureds for losses *caused by the COVID-19 virus* and the referenced Orders." *Id.*, Count II, ¶ 54 (at p. 15) (emphasis added).

### B. Contract Language At Issue

#### 1. The Relevant Coverage Provisions

Windber purchased a commercial insurance policy from Travelers, which insured its buildings and business personal property from direct physical loss or damage caused by covered causes of loss, such as a fire or windstorm. For example, in the event of a fire that requires a

suspension of business operations, the Policy would cover a loss of business income or increase in expenses that results from the suspension of operations caused by the fire damage and occurs during the "period of restoration"—while the repairs are being made.

As noted above, Plaintiff's Complaint seeks coverage under the Policy's Business Income and Extra Expense provision, Civil Authority provision and "contamination" coverage. The Business Income and Extra Expense coverages provide, in relevant part:

> We will pay for:
> - The actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration"; and
> - The actual Extra Expense you incur during the "period of restoration"; <u>caused by direct physical loss of or damage to property</u> at premises which are described in the Declarations and for which a Business Income and Extra Expense Limit of Insurance is shown in the Declarations. <u>The loss or damage must be caused by or result from a Covered Cause of Loss</u>. . . . .

Doc. 1-2, at 57 (underscores added). "Covered Causes of Loss" are "RISKS OF DIRECT PHYSICAL LOSS <u>unless the loss is . . . [e]xcluded</u> . . . ." *Id.* at 58 (underscore added). As highlighted, the express requirements for Business Income and Extra expense coverages to apply include: (i) "direct physical loss or damage" that is (ii) due to a "Covered Cause of Loss" (i.e., a non-excluded cause).

The "Civil Authority" coverage provides in relevant part:

> <u>When a Covered Cause of Loss causes damage to property other than property at the described premises</u>, we will pay for the actual loss of Business Income you sustain and the actual Extra Expense you incur caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
> **(a)** <u>Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage</u>, and the described premises are within that area but are not more than 100 miles from the damaged property; and
> **(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the <u>Covered Cause of Loss</u> that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at 58-59 (underscores added). As highlighted, the express requirements for Civil Authority coverage to apply include: (i) "damage to property other than property at [Plaintiff's] premises"; (ii) Plaintiff's premises must be "not more than 100 miles from the damaged property"; (iii) "[a]ccess to the area immediately surrounding the damaged property [must be] prohibited by civil authority as a result of the damage" that gave rise to the prohibition of access; and (iv) such damage must be the result of "a Covered Cause of Loss" (i.e., a cause that is not excluded from coverage).

The Complaint also makes passing references to "contamination" coverage, Compl. ¶¶ 1, 32, 36, which appear to reference an endorsement to the Policy entitled "Ordinance Or Law—Communicable Disease Contamination Coverage." This endorsement states, in pertinent part:

1. If, during the policy period, Covered Property at the described premises is contaminated by a "communicable disease",[5] we will pay for the actual and necessary additional costs you incur to clean up and remove the "communicable disease" from the contaminated Covered Property due to the enforcement of any ordinance or law, in effect at the time of the contamination, that requires you to clean up and remove the "communicable disease" from the Covered Property.

2. Insurance under this Additional Coverage applies only to clean up and removal costs incurred in complying with the minimum standards of the ordinance or law. Insurance under this Additional Coverage does not apply to:
   . . .
   d. Any loss of income, extra expense or any other indirect loss caused by or resulting from the contamination of Covered Property by a "communicable disease".

Doc. 1-2, at 78 (underscore added).

---

[5] The term "communicable disease" is defined as "a viral or bacterial micro-organism that induces or is capable of inducing physical illness or disease." Doc. 1-2, at 79. The endorsement provides that the Virus or Bacteria exclusion does not apply to the Ordinance or Law – Communicable Disease Contamination Coverage provided therein. *Id.* at 78.

### 2. The Virus Exclusion

Exclusions applicable to the Business Income, Extra Expense and Civil Authority coverages are found in in "Section C. Exclusions" of the Deluxe Property Coverage Form. *See* Doc. 1-2, at 58. The Section C. exclusions provide in relevant part:

### C. EXCLUSIONS

**1.** <u>We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage</u>. Exclusions **C.1.a.** through **C.1.l.** apply whether or not the loss event results in widespread damage or affects a substantial area.
. . .

### j. Virus or Bacteria

**(1)** <u>Any virus</u>, bacterium, or other micro-organism <u>that induces or is capable of inducing physical distress, illness or disease</u>.

Doc. 1-2, at 36, 38 (underscores added).[6]

## III. LEGAL STANDARDS

"A motion for judgment on the pleadings under Rule 12(c) 'is analyzed under the same standards that apply to a Rule 12(b)(6) motion.'" *Wolfington*, 935 F.3d at 195 (quoting *Revell v. Port Authority*, 598 F.3d 128, 134 (3d Cir. 2010). A complaint must contain sufficient factual matter, which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell*

---

[6] Although the Court need not consider it for purposes of this motion, the Policy also includes an endorsement entitled "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA." This endorsement applies not only to the Coverage Part of the Policy at issue in this case (the Deluxe Property Coverage Part) but also, to the extent included in the Policy, certain other Coverage Parts. Plaintiff's Policy, for example, includes a Commercial Inland Marine Coverage Part, to which this endorsement applies. The virus exclusion in the endorsement states: "We will not pay for loss or damage caused by or resulting from <u>any virus</u>, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Doc. 1-2, at 137 (underscore added).

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff "must plead more than labels and conclusions," and "[f]actual allegations must be enough to raise the right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678; *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (describing three-step process for applying *Twombly* and *Iqbal*).

Under Pennsylvania law,[7] the language of an insurance policy "must be construed in its plain and ordinary sense, and the policy must be read in its entirety." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014). "When the language of an insurance policy is plain and unambiguous, a court is bound by that language." *Id.* Moreover, "policy terms should be read to avoid ambiguities," and "a court cannot rewrite the terms of a policy or give them a construction in conflict with the accepted and plain meaning of the language of the policy." *Imperial Cas. & Indem. Co. v. High Concrete Structures, Inc.*, 858 F.2d 128, 131 (3d Cir. 1988); *see also Guardian Life Ins. Co. of Am. v. Zerance*, 479 A.2d 949, 953 (Pa. 1984)

---

[7] Pennsylvania law applies here. This Court, sitting in diversity jurisdiction, applies the choice of law rules of the forum state, i.e., Pennsylvania. *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). Pennsylvania applies "the law of the state having the most significant contacts or relationships with the contract," *Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 921 (Pa. Super. Ct. 2002), and here the Policy was issued to Windber at an address in Pennsylvania and insured property located in Pennsylvania. Doc. 1-2, at 1, 2, 7 of 149. *See also Triangle Publications, Inc. v. Liberty Mut. Ins. Co.*, 703 F. Supp. 367, 369 (E.D. Pa. 1989) (Pennsylvania law applied where insured was domiciled in and insured property was located in Pennsylvania).

("We may not rewrite the insurance contract, under the guise of judicial interpretation, to expand the coverage beyond that as provided in the policy.").

## IV.  ARGUMENT

The facts pleaded in the Complaint demonstrate as a matter of law that Windber cannot prove an entitlement to coverage under the Policy. Indeed, the Complaint seeks coverage for losses that Plaintiff expressly alleges were caused by a virus and the Orders issued to combat the spread of the virus—yet, as previously described, the Policy contains explicit exclusions applicable to Civil Authority, Business Income and Extra Expense coverage for any "loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium, or other micro-organism that induces or is capable of inducing physical distress, illness or disease." For this reason alone, Travelers is entitled to judgment on the pleadings on the Complaint's causes of action for declaratory and injunctive relief regarding the Civil Authority, Business Income and Extra Expense coverages. As further explained below, Plaintiff's request for "contamination" coverage also fails to plead the express requirements for that coverage under the Policy.

### A.  Windber Is Not Entitled to Civil Authority Coverage As a Matter of Law

Civil Authority coverage insures certain business income losses and expenses "caused by action of civil authority" that occurs "[w]hen a *Covered Cause of Loss* causes damage to property other than property at the described premises . . . ." Doc. 1-2, at 58 (emphasis added). Again, the Policy explicitly excludes losses "caused directly or indirectly by . . . any virus" from its Covered Causes of Loss.  Moreover, Plaintiff alleges, and the Orders reflect, that they were issued not due to any property damage, but rather for purposes of "social distancing" and to slow the spread of COVID-19. In addition, the Civil Authority coverage applies only if "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a

result of the damage," and the insured premises must be "within that area" for coverage to apply. *Id.* at 58. Plaintiff fails to allege any damage to non-insured property, or any prohibition of access to an area surrounding its premises as a result of any damage to non-insured property. Because Plaintiff's allegations fail to satisfy any of these required elements of Civil Authority coverage, judgment on the pleadings should be granted in favor of Travelers as to Plaintiff's requests regarding this coverage.

**1.      Civil Authority Coverage Does Not Apply to Losses Caused by or Resulting From a Virus**

Pursuant to the Policy's express terms, an "action of civil authority" can *only* give rise to coverage if, among other requirements, "a Covered Cause of Loss causes damage to property other than property at the described premises . . . ." Doc. 1-2, at 58. As a matter of logic as well as explicit policy language, an *excluded* risk of loss is *not* a Covered Cause of Loss.

Plaintiff's Complaint repeatedly admits that it seeks to recover for "losses *caused by the COVID-19 virus* and the governmental Orders entered in connection therewith." Compl. ¶ 2 (emphasis added); *see also id.* Count I, ¶¶ 31, 33, 35, 36, 39, 66-68, 72, Prayer for Relief; Count II, ¶¶ 50, 52-54, Prayer for Relief. Plaintiff further alleges that the Orders were issued to reduce "the opportunity for unnecessary gatherings, personal contact and interaction that will increase the risk of transmission and the risk of community spread of COVID-19." Compl. ¶ 21; *see also*

Proclamations and Orders cited in Compl. ¶¶ 18-23, attached as Exs. 2-7 to Travelers' Answer.[8]

The losses alleged, therefore, are caused by the "COVID-19 virus," a risk of loss that falls squarely within the Policy's broad exclusion of "loss or damage *caused directly or indirectly by . . . [a]ny virus*, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Doc. 1-2, at 36, 38 (emphasis added). And the exclusion expressly applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage." *Id.* at 36. *See T.H.E. Ins. Co. v. Charles Boyer Children's Tr.*, 455 F. Supp. 2d 284, 291 (M.D. Pa. 2006), *aff'd*, 269 F. App'x 220 (3d Cir. 2008) (holding that this clause "precludes coverage of a loss so long as a specifically enumerated exclusion contributed in some way to the loss"); *Gillin v. Universal Underwriters Ins. Co.*, No. CIV.A. 09-5855, 2011 WL 780744, at *7 (E.D. Pa. Mar. 4, 2011) (same result); *Steding v. Mut. Benefit Ins. Co.*, No. 1441 WDA 2016, 2017 WL 1828307, at *5 (Pa. Super. Ct. May 4, 2017) (non-precedential) (enforcing and applying same clause in water damage exclusion).

Pennsylvania law instructs that "[w]hen the language of an insurance policy is plain and unambiguous, a court is bound by that language." *St. John*, 106 A.3d at 14. Pennsylvania courts evaluating policy exclusions foreclosing coverage for losses "caused by" specified noncovered

---

[8] On this motion for judgment on the pleadings, the Court may take judicial notice of and consider the fact of the issuance of and reasons stated therein for issuing the proclamation and orders cited and relied upon in the Complaint. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Wolfington*, 935 F.3d at 195 (on Rule 12(c) motion, court may consider "matters of public record, as well as undisputedly authentic documents if the complaint's claims are based upon these documents"); *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (court may consider documents of which judicial notice may be taken on Rule 12(c) motion); *Tasty Baking Co. v. Cost of Living Council*, 395 F. Supp. 1367, 1394 (E.D. Pa. 1975), *aff'd in part, rev'd in part on other grounds*, 529 F.2d 1005 (Temp. Emer. Ct. App. 1975) (taking judicial notice of executive order).

risks have found the provisions unambiguous and applied their plain meaning.  *See, e.g.*, *Wexler Knitting Mills v. Atl. Mut. Ins. Co.*, 555 A.2d 903, 905 (Pa. Super. Ct. 1989).[9]

There is no question that the plain language of the virus exclusion controls here.  The Complaint specifically (and necessarily) describes the "Coronavirus," also referred to as the "COVID-19 virus," as a "virus," and acknowledges that it has led to a pandemic and "public health crisis." Compl. ¶¶ 1-2, 13, 14, 16, 21. Thus, as alleged by Plaintiff, the "COVID-19 virus" is a virus "capable of inducing physical distress, illness or disease," which falls squarely within the scope of the virus exclusion. Doc. 1-2, at 38. The "COVID-19 virus" is not a Covered Cause of Loss and therefore cannot give rise to Civil Authority coverage.

Nonetheless, Plaintiff explicitly requests "a declaration that he [sic] is entitled to coverage for losses caused by the COVID-19 virus," and an injunction enjoining Travelers from denying coverage "for losses caused by the COVID-19 virus . . . ." Compl., Count I, ¶ 72; Count II, ¶ 54.  To grant these requests would "distort the meaning of the language or resort to a strained contrivance  . . . ." *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). Such a result would effectively "rewrite" the Policy, *Guardian Life*, 479 A.2d at 953,

---

[9] While few courts have had occasion to construe a virus or microorganism exclusion, courts have enforced them in accordance with their clear and unambiguous language. *See, e.g.*, *Certain Underwriters at Lloyd's London v. Creagh*, Civ. A. No. 12-571, 2013 WL 3213345 (E.D. Pa. June 26, 2013) (holding that exclusion for "any loss . . . arising out of or relating to . . . [a] microorganism of any type" precluded coverage for damage to bathroom caused by bacteria from dead body), *aff'd*, 563 Fed. App'x 209 (3d Cir. 2014); *Doe v. State Farm Fire & Cas. Co.*, No. 2015-0136, 2015 WL 11083311, at *2 (N.H. Sept. 21, 2015) ("We conclude that a reasonable person in the position of the insured, based upon more than a casual reading of the policy as a whole, would understand the policy to exclude all diseases and viruses that can be transmitted from one person to another."); *Lambi v. Am. Family Mut. Ins. Co.*, 498 F. App'x 655, 656 (8th Cir. 2013) ("the policy excluded bodily injury arising out of the actual or alleged transmission of a communicable disease, and infecting another with the HIV virus clearly falls within the plain and ordinary meaning of the transmission of a communicable disease"); *Clarke v. State Farm Fla. Ins.*, 123 So. 3d 583, 584 (Fla. Dist. Ct. App. 2012) (similar result, finding exclusion unambiguous).

and "[t]o allow recovery . . . despite the unambiguous language of the insurance policy would be to provide coverage for which premiums have not been paid." *Pennsylvania Nat. Mut. Cas. Co. v. Black*, 916 A.2d 569, 581 (Pa. 2007) (noting that "[w]e have repeatedly enforced contractual language to avoid *gratis* coverage").

Because Plaintiff's construction of the Policy requires that the virus exclusion be ignored, it is unreasonable, and judgment on the pleadings is warranted.

>    **2.      Civil Authority Coverage Does Not Apply Because the Complaint Does Not Allege that Access to the Area Surrounding Plaintiff's Premises Was Prohibited by a Civil Authority**

The Complaint's allegations fail to satisfy another requirement for Civil Authority coverage—that "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than 100 miles from the damaged property." Doc. 1-2, at 58-59. Courts interpreting civil authority provisions uniformly hold that to "prohibit" access means to "formally forbid" or "prevent" any access. *See, e.g.*, *Southern Hospitality, Inc. v. Zurich American Ins.*, 393 F.3d 1137, 1140 (10th Cir. 2004). Civil authority coverage cases after the September 11, 2001 terrorist attacks uniformly rejected attempts by hotels, airport parking garages, and even airport gift shops to claim coverage for losses incurred as a result of the FAA orders because they did not "prohibit access" as required by the policy language. *See Southern Hospitality*, 393 F.3d at 1140 ("The FAA order prohibited access to airplane flights; it did not prohibit access to hotel operations."); *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248 (5th Cir. 2003) (unpublished) ("The generally prevailing meaning of 'prohibit' is . . . 'to forbid by authority or command,'" and "[i]t is undisputed that the FAA did not forbid any person to access the [insured's] hotels" after the September 11th attacks); *Philadelphia Parking*

*Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005) (While the order "may have temporarily obviated the need for Plaintiff's parking services, it did not prohibit access to Plaintiff's garages and therefore cannot be used to invoke coverage[.]"); *Backroads Corp. v. Great Northern Ins.*, 2005 WL 1866397, *6 (N.D. Cal. 2005) (similar); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-CV-3154-JEC, 2004 WL 5704715, at *7 (N.D. Ga. Dec. 15, 2004) ("The Court sees no reasonable means of construing [the] order to ground all aircraft as an order specifically forbidding access to plaintiff's premises" in airport terminal stores.). Likewise, while post-September 11th orders closing lower Manhattan businesses in the days following the attacks "prohibited access" to businesses, subsequent "vehicular traffic restrictions" were insufficient to trigger coverage even though they "restrain[ed] . . . normal operating procedures" for businesses. *Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 335-36 (S.D.N.Y. Mar. 12, 2004); *see also 54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*, 763 N.Y.S.2d 243, 244 (N.Y. App. Div. 2003).

Courts uniformly hold that to "prohibit" access within the meaning of a civil authority provision requires that an order "completely prohibit[] access"—not "merely hinder[] access"— to implicate coverage. *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at *5 (M.D. Pa. July 6, 2010); *see also Commstop, Inc. v. Travelers Indemn. Co. of Conn.*, No. cv-11-1257, 2012 WL 1883461 (W.D. La. 2012), at *9 (coverage only applies where access is "totally and completely prevented—i.e., made impossible" by the civil authority action); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. CIV. A. 06-770-C, 2007 WL 2489711, at *4 (M.D. La. Aug. 29, 2007) (no coverage when order "encouraged" residents to stay off streets before hurricane, because it did not "actually and completely prohibit access"); *By Dev., Inc. v. United Fire & Cas. Co.*, No.

CIV. 04-5116, 2006 WL 694991, *5 (D.S.D. Mar. 14, 2006), *aff'd*, 206 F. App'x 609 (8th Cir. 2006).

Here, Windber alleges that it "has been ordered to close its business" as a result of the Orders,[10] but completely fails to allege that "[a]ccess to the area immediately surrounding the damaged property," including the insured premises, was "prohibited by civil authority," as required by the Policy. Doc. 1-2, at 58. Plaintiff fails to identify any damage to non-insured property that resulted in any civil authority order, and fails to allege that there was any prohibition on someone driving a car into Plaintiff's parking lot, for example. Without a prohibition of access to the area surrounding Plaintiff's property, there is no coverage under the plain language of the Policy.

### 3. Civil Authority Coverage Does Not Apply Because the Complaint Does Not Allege That the Orders Were the Result of Damage to Property

Plaintiff's allegations also fail to satisfy the Policy's requirement that the civil authority order result "[w]hen a Covered Cause of Loss causes damage to property other than property at the described premises," with the prohibition of access by a civil authority being "a result of the damage . . . ." Doc. 1-2, at 58. The Policy further requires that "[t]he action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil

---

[10] Although beyond the scope of this motion for judgment on the pleadings, Travelers notes that the Complaint's allegations that Plaintiff was ordered to "close" its health care facilities are contrary to what Plaintiff's representative told Travelers when the claim was submitted, and appear to be contrary to Governor Wolf's orders. As reflected in one of the exhibits to the Complaint, Plaintiff's representative advised Travelers that its facilities were still open for performance of some medical procedures, but fewer surgeries were being performed. Doc. 1-3, at 1. Plaintiff's allegations are also contrary to a list of essential services which was attached to one of Governor Wolf's orders, and which states that only elective health care procedures were prohibited.

authority to have unimpeded access to the damaged property." *Id.* at 59. Courts have consistently held that similar Civil Authority provisions require "proof of a *causal link* between prior damage and civil authority action." *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 687 (5th Cir. 2011) (emphasis added); *see also South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*, Civ. A. No. H-06-4041, 2008 WL 450012, at *8 (S.D. Tex. Feb. 15, 2008) (civil authority coverage requires a "close causal link" between damage to property and civil authority order).

Here, Plaintiff alleges that the Orders were required due to the need to reduce "unnecessary gatherings, personal contact and interaction," in order to reduce "the risk of transmission and the risk of community spread of COVID-19." Compl. ¶ 21; *see also* Proclamation of Disaster Emergency dated Mar. 5, 2020 (Ex. 2 to Answer), at p. 1 (declaring state of emergency based on need to "mitigate the spread of COVID-19"); Order of Gov. Wolf dated Mar. 19, 2020 (Ex. 3 to Answer), at p. 1 (closing certain businesses due to "public health emergency" created by COVID-19). None of the orders relied upon in the Complaint makes *any* reference to the order being issued as the result of any damage to property. Exs. 2-7 to Answer.[11] This is another independent reason why Plaintiff is not entitled to coverage under the Civil Authority provision. *See, e.g.*, *Dickie Brennan*, 636 F.3d at 686 (no civil authority coverage because order was not "'due to' physical damage to property"); *United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 134 (2d Cir. 2006) (civil authority coverage did not apply where

---

[11] Because the Orders make no reference to damage to property, the Complaint's conclusory allegation that "[t]he COVID-19 virus, as evidenced by the[] Orders, causes damage to property," Compl. ¶ 24, must be disregarded. *See, e.g.*, *Payne v. DeLuca*, No. 2:02-CV-1927, 2006 WL 3590014, at *9 n.5 (W.D. Pa. Dec. 11, 2006) ("[A] court is not required to accept conclusory allegations in a complaint when those allegations are contradicted by documents incorporated in the pleadings."); *U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC*, 519 F. Supp. 2d 515, 520 (E.D. Pa. 2006) ("Nor must a court accept as true conclusory allegations contradicted by documents underlying the complaint.").

"the government's subsequent decision to halt operations at the Airport indefinitely was based on fears of future attacks" on September 11, 2001, not because of damage to adjacent property); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, No. 4:19-CV-00693-SAL, 2020 WL 886120, at *8 (D.S.C. Feb. 24, 2020) (finding no coverage under civil authority provision where governor's executive order, "which started the mandatory evacuation, does not reference any 'damage or destruction of property'"); *Paradies Shops*, 2004 WL 5704715, at *7 (finding no coverage under civil authority provision where order issued after September 11th attacks "was issued as a result of the threat of additional terrorist acts," not due to existing damage to property); *South Texas Med. Clinics*, 2008 WL 450012, at *10 (finding no coverage under civil authority provision where "the mandatory evacuation order for Wharton County was issued due to the anticipated threat of damage to the county and not due to damage that had occurred in Florida and the Gulf of Mexico").

Thus, as a matter of law, Plaintiff is not entitled to a declaration establishing Civil Authority coverage under the Policy because the Complaint does not allege: (1) damage to property caused by a Covered Cause of Loss, in light of the virus exclusion; (2) that the Orders "prohibited" access to "the area immediately surrounding" Plaintiff's premises; or (3) that the Orders were the result of damage to non-insured property.

**B.     Business Income and Extra Expense Coverage Similarly Does Not Apply as a Matter of Law**

The focal point of the Complaint is the Orders, which implicate Civil Authority coverage, as addressed above. Compl. ¶¶ 18-23. Yet Plaintiff also alleges entitlement to Business Income and Extra Expense coverage. *Id.* ¶¶ 30, 32, 36. This claim also fails as a matter of law.

The Policy provides coverage for "actual loss of Business Income . . . due to the necessary 'suspension' of [Plaintiff's] 'operations'" and the "actual Extra Expense you incur

during the 'period of restoration,'" only if (1) the suspension is "caused by direct physical loss of or damage to property at [Plaintiff's] premises," and (2) the direct physical loss or damage is "caused by or result[s] from a Covered Cause of Loss." Doc. 1-2, at 57. Although the Complaint includes allegations regarding the Coronavirus purportedly causing physical loss or damage generally (*see* Compl. ¶ 15 (alleging that the COVID-19 virus "infects and stays on the surfaces of objects and materials for prolonged periods"), ¶ 24 (alleging, in a conclusory manner, that the COVID-19 virus "causes damage to property"), ¶ 29 (similar)),[12] Plaintiff fails to allege that the Coronavirus was present in its own premises, pleading only that there is a "heightened risk" or "risk of contamination to the insured premises," and that its premises are "susceptible to . . . contamination." Compl. ¶¶ 24, 27, 28.  Because Plaintiff does not allege facts demonstrating "direct physical loss of or damage to property" at its premises, judgment on the pleadings is warranted on this basis alone.

But even if Plaintiff had adequately alleged direct physical loss of or damage to property at the insured premises, there is no Business Income or Extra Expense coverage for the same reason that there is no Civil Authority coverage:  a virus is not a Covered Cause of Loss, as specified in the virus exclusion discussed above. *See* Doc. 1-2, at 137 ("The exclusion applies to . . . forms or endorsements that cover *business income, extra expense*, rental value or action of civil authority") (emphasis added). Plaintiff's only allegations of physical loss or damage to property are purportedly caused by or resulting from the Coronavirus (Compl. ¶¶ 15, 24, 29), and

---

[12] Although Travelers does not seek adjudication of this issue on this motion, what the Complaint describes would not constitute direct physical loss or damage as a matter of law. *See Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (VEC), tr. at 5, 15 (S.D.N.Y. May 14, 2020) (Ex. 1 hereto) (court explaining in case making allegations similar to Plaintiff's allegations that COVID-19 "damages lungs," "[i]t doesn't damage printing presses" or other property, and "this is just not what's covered under these insurance policies").

the Policy precludes Business Income and Extra Expense coverage claimed on this basis. Thus, as a matter of law, Plaintiff's Complaint premised on the Coronavirus cannot trigger Business Income or Extra Expense coverage.

### C. The Complaint Fails to Allege a Plausible Claim Under the Ordinance or Law – Communicable Disease Contamination Coverage

Plaintiff's Complaint includes several vague references to "contamination" coverage. Compl. ¶¶ 1, 32, 36, Count II ¶ 50. These allegations presumably refer to the Ordinance or Law – Communicable Disease Contamination Coverage provided by an endorsement to the Policy. Doc. 1-2, at 78. But Plaintiff fails to plead any of the facts required for this coverage to apply. This provision states that:

> If, during the policy period, Covered Property at the described premises is contaminated by a "communicable disease", we will pay for the actual and necessary additional costs you incur to clean up and remove the "communicable disease" from the contaminated Covered Property due to the enforcement of any ordinance or law, in effect at the time of the contamination, that requires you to clean up and remove the "communicable disease" from the Covered Property.

*Id.* The term "communicable disease" is defined as a "viral . . . microorganism that induces or is capable of inducing physical illness or disease," *id.* at 79, and thus would include the Coronavirus.[13] The endorsement, however, makes clear that "this Additional Coverage does not apply to . . . [a]ny loss of income, extra expense or any other indirect loss caused by or resulting from the contamination of Covered Property by a 'communicable disease'." *Id.* at 78 (underscore added).

To the extent Plaintiff attempts to invoke this coverage in the Complaint, the allegations fail to state a claim because they do not include any facts demonstrating that: (1) Plaintiff's

---

[13] The endorsement specifies that the virus exclusion does not apply to the limited coverage provided by the endorsement. Doc. 1-2, at 78.

premises were in fact contaminated by the Coronavirus; (2) Plaintiff incurred "additional costs" (i.e., in addition to normal operating costs of Plaintiff's medical facilities, such as normal cleaning costs) to clean up and remove "communicable disease"; or (3) that the costs were "due to the enforcement of" an ordinance or law requiring such additional cleanup costs to be incurred. Plaintiff alleges only that its medical facilities pose a "heightened *risk* of contamination by the COVID-19 virus" and that its premises are "susceptible to . . . contamination." Compl. ¶¶ 27-28 (emphasis added). Such allegations plainly fall "short of the line between possibility and plausibility of entitlement to relief," *Iqbal*, 556 U.S. at 678, even with respect to the first of the three requirements for coverage set forth above, i.e., that the premises were contaminated by a "communicable disease." *See Catholic Med. Ctr. v. Fireman's Fund Ins. Co.*, No. 14-CV-180-JL, 2015 WL 3463417, at *4 (D.N.H. June 1, 2015) (communicable disease coverage provision did not apply where there was no "decontamination or disinfection" of hospital required). In addition, the Complaint contains no allegations whatsoever that would demonstrate that the second and third requirements for coverage are satisfied, i.e., that additional costs for cleanup were incurred, and that the costs resulted from enforcement of an ordinance or law. Plaintiff has thus failed to plead a claim for coverage under the Ordinance or Law – Communicable Disease Contamination Coverage endorsement.

### D.    Judgment on the Pleadings Should Be Granted on the Entire Complaint

Travelers should be granted judgment on the pleadings on all of Plaintiff's claims. Count I seeks a declaratory judgment that Plaintiff "is entitled to coverage for losses caused by the COVID-19 virus and the referenced Orders." Compl., Count I, ¶ 72. For all of the reasons set forth above, Plaintiff is not entitled to such a declaration. *See*, *e.g.*, *Hackbarth v. Nationwide Mut. Ins. Co.*, No. CIV. 13-1596, 2014 WL 3378695, at *8 (W.D. Pa. July 9, 2014) (where

plaintiff failed to plead facts that would establish "entitlement to first party benefits" under insurance policy, declaratory judgment claim was dismissed). Similarly, Count II seeks an injunction that would enjoin Travelers "from further denying coverage to Plaintiff for losses caused by the COVID-19 virus and the referenced Orders." Compl., Count II, ¶ 54. Travelers is entitled to judgment on the pleadings because Plaintiff fails to establish any of the basic requirements for an injunction, including likelihood of success on the merits or irreparable harm. *See*, *e.g.*, *Gonzalez v. U.S. Bank Nat. Ass'n*, No. CIV.A. 14-7855, 2015 WL 3648984, at *4 (D.N.J. June 11, 2015) ("Having failed to establish either a likelihood of success on the merits or irreparable harm, Plaintiff's claim for injunctive relief is dismissed."); *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 557 (3d Cir. 2009) ("We have long held that an injury measured in solely monetary terms cannot constitute irreparable harm.").

Lastly, to the extent Plaintiff attempts to plead claims on behalf of a proposed class (Complaint, ¶¶ 38-64), those allegations cannot survive where Plaintiff's individual claims fail to state a claim. *See*, *e.g.*, *Bass v. Butler*, 116 F. App'x 376, 385 (3d Cir. 2004) ("Because no class has been certified here, if [the named plaintiff's] claim fails, the entire action must be dismissed."); *In re Mortgagors of Temple-Inland Mortg. Corp.*, No. CIV. A. 99-CV-4633, 2001 WL 177181, at *3 (E.D. Pa. Jan. 24, 2001) ("As no class has yet been certified in this case, and the original named plaintiffs have been dismissed, the case or controversy requirement of Article III is not met and this case must be dismissed."); *Clark v. Unifund CCR Partners*, No. 07CV0266, 2007 WL 1258113, at *4 (W.D. Pa. Apr. 30, 2007) (same result).

## V. CONCLUSION

For all of the reasons stated above, Windber has failed to state any claim upon which relief must be granted. Thus, Travelers respectfully requests that the Court grant judgment on the pleadings in favor of Travelers under Federal Rule of Civil Procedure 12(c).

Respectfully submitted,

By:  */s/ Richard D. Gable, Jr.*

Richard D. Gable, Jr. (Pa. ID No. 65842)
Butler Weihmuller Katz Craig LLP
1818 Market Street
Suite 2740
Philadelphia, PA 19103
Tel: 215-405-9191
Fax: 215-405-9190
E-mail: rgable@butler.legal

Stephen E. Goldman (*pro hac vice* motion filed)
Wystan M. Ackerman (*pro hac vice* motion filed)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT  06103
Tel: 860-275-8200
Fax: 860-275-8299
E-mail: sgoldman@rc.com
E-mail: wackerman@rc.com

Attorneys for Defendant
Travelers Property Casualty Company of America

**CERTIFICATE OF SERVICE**

I, Richard D. Gable, Jr., certify that on June 9, 2020, I caused a true and correct copy of

the foregoing to be served via ECF upon the following:

> James C. Haggerty, Esq.
> Haggerty, Goldberg, Schleifer & Kupersmith, P.C.
> chesser@hgsklawyers.com
>
> Scott B. Cooper, Esq.
> Schmit Kramer, P.C.
> scooper@schmidtkramer.com
>
> *Attorneys for Plaintiff, Windber Hospital d/b/a Chan Soon
> Shiong Medical Center*

> /s/ Richard D. Gable, Jr.