IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WINDBER HOSPITAL d/b/a CHAN SOON SHIONG MEDICAL CENTER, *on behalf of itself and all others similarly situated*, | ) ) ) ) ) | Case No. 3:20-cv-80 |
| Plaintiff, | ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) | |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case arises from a dispute regarding the obligations of Defendant Travelers Property Casualty Company of America ("Travelers") under a Deluxe Property Policy (the "Policy") entered into with Plaintiff Windber Hospital, d/b/a/ Chan Soon Shiong Medical Center at Windber ("Windber"). Windber asserts that it is entitled to recover "continuing normal operating expenses" under the Policy as a result of losses and damages stemming from orders issued by the government in response to the COVID-19 pandemic. Windber brings this action individually and on behalf of a class of similarly situated entities in the Commonwealth of Pennsylvania. Pending before the Court is Travelers's Motion for Judgment on the Pleadings (ECF No. 10). The Motion is fully briefed (ECF Nos. 10, 11, 24, 30)[1] and ripe for disposition. For the following reasons, the Court **GRANTS** the Motion.

---

[1] The parties also provided the Court with additional supplemental authorities. (ECF Nos. 31–48).

I.  **Factual Background**[2]

The Court derives the following facts from the Complaint (ECF No. 1) and accepts them as true for the purpose of deciding the Motion. Windber is a corporation organized under the laws of Pennsylvania with a principal place of business in Windber, Pennsylvania. (*Id.* at ¶ 3). Travelers is a corporation organized under the laws of Connecticut with its principal place of business in Hartford, Connecticut. (*Id.* at ¶ 5). Windber purchased a commercial insurance policy from Travelers with an issue date of October 19, 2019.[3] (*Id.* at ¶¶ 10–14).

Due to the ongoing COVID-19 pandemic, Pennsylvania Governor Tom Wolf and the Pennsylvania Department of Health issued a series of orders and proclamations ("Orders") that affected Windber's business. (*Id.* at ¶¶ 15–27). Windber alleges that, as a result of the pandemic and the Orders, it "has suffered Business Income, Civil Authority and other related losses" covered by the Policy. (*Id.* at ¶ 30). Windber sought coverage for those losses under the Policy from Travelers but was denied. (*Id.* at ¶ 34).

The Policy provides that Travelers:

Will pay for:
- The actual loss of Business Income [Windber] sustain[s] due to the necessary 'suspension' of [its] 'operations' during the 'period of restoration'; and
- The actual Extra Expense [Windber] incur[s] during the 'period of restoration';

caused by direct physical loss of or damage to property at premises which are in the Declarations and for which a Business Income and Extra Expense Limit of

---

[2] While recounting the background, the Court only addresses the facts relevant to the resolution of the instant motion.
[3] Windber specifically referenced and attached the Policy to its complaint. (ECF Nos. 1 at ¶10, 1-2). Travelers included a certified copy of the Policy with its Answer. (ECF Nos. 9, 9-1). The Policy documents provided by the parties appear to be identical, all references will be to the Policy document attached to and referenced in the complaint (ECF No. 1-2).

>   Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

(ECF No. 1-2 at 57). As set forth in the Policy, "Business Income means the sum of the: (1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; plus (2) Continuing normal operating expenses incurred, including payroll." (*Id.*). The Period of restoration is defined by the Policy as "the period of time after direct physical loss of or damage to Covered Property from a Covered Cause of loss" beginning immediately or after the applicable waiting period and ending "on the earlier of: (1) The date when the Covered Property should be repaired or replaced with reasonable speed and similar quality; or (2) The date when business operations resume." (*Id.* at 130).

>   The "Civil Authority" coverage of the Policy provides:
>
>   When a Covered Cause of Loss causes damage to property other than property at the described premises, [Travelers] will pay for the actual loss of Business Income [Windber] sustain[]s and the actual Extra Expense [Windber] incur[s] caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>   (a) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than 100 miles from the damaged property; and
>   (b) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(*Id.* at 58–59). Coverage under the Civil Authority provision for Business Income lasts for up to thirty consecutive days after the coverage begins and coverage for Extra Expenses lasts for up to thirty days after Civil Authority coverage began or when Business Income coverage under the Civil Authority terminates, whichever is later. (*Id.* at 59).

The Policy also contains numerous exclusions, including a Virus Exclusion found at section C(1)(j) of the Deluxe Property Coverage form of the Policy. This exclusion provides that Travelers "will not pay for loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness, or disease." (*Id.* at 36, 39). This "loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage." (*Id.* at 36). The language of the Virus Exclusion "applies to all coverage under all forms and endorsements" of the Policy. (*Id.* at 137).

In its Complaint, Windber alleges it is entitled to a declaration that it "is covered under the Travelers Policy for, *inter alia*, business income, extra expense, contamination, civil authority and other coverages." (*Id.* at ¶ 32). Windber further contends an entitlement to recover "for all losses caused by the COVID-19 virus" and the Orders.[4] (*Id.* at ¶ 33). Windber also seeks "a [court o]rder enjoining . . . Travelers[] from denying coverage to insureds for business income, extra expense, contamination, civil authority and other coverages for losses caused by the COVID-19 virus and [the] Orders." (*Id.* at ¶ 36). Windber also "seeks to represent a class of Pennsylvania citizens who have sustained covered losses caused by the COVID-19 virus and the [] Orders." (*Id.* at ¶ 40).

---

[4] It is unclear what the exact effect of the Orders was on Windber's operations. In the Complaint, Windber states that because of COVID-19 and the Orders, it was "ordered to *close* its business and forced to furlough employees." (ECF No. 1 at ¶ 25) (emphasis added). However, the letter from Travelers to Windber denying coverage under the Policy and referenced in the complaint, states that Windber "informed [Travelers] that as of the time [Windber] reported th[e] loss[, the] business *was still open*." (ECF No. 1-3 at 1) (emphasis added).

## II. Legal Standard

Motions for judgment on the pleadings are governed by Rule 12(c) of the Federal Rules of Civil Procedure. A motion for judgment on the pleadings should be granted "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 469 n.7 (3d Cir. 2019) (citation omitted). A motion for judgment on the pleadings "is analyzed under the same standards that apply to a Rule 12(b)(6) motion[,]" with a court "view[ing] the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party construing all allegations and inferences in the light most favorable to the nonmoving party." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (citation omitted). The facts presented in the pleadings include those from exhibits attached to the pleadings. *See* Fed. R. Civ. P. 10(c).

## III. Discussion

The parties agree that Pennsylvania law applies to Windber's claims. (ECF No. 11 at 9, n.7); (ECF No. 24 at 3). Under Pennsylvania law, "[t]he goal in construing and applying the language of an insurance contract is to effectuate the intent of the parties as manifested by the language of the specific policy." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014). Further, "[w]hen the language of an insurance policy is plain and unambiguous, a court is bound by that language." *Id.* However, "if an insurance policy contains an ambiguous term, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." *Id.* (citation omitted). The "[c]ontract language is ambiguous if it is reasonably susceptible to more than one construction and meaning." *Id.* A provision of the contract is not "ambiguous

simply because the parties do not agree upon the proper construction." *Weisman v. Green Tree Ins. Co.*, 670 A.2d 160, 161 (Pa. Super. Ct. 1996). "Finally, the language of the policy must be construed in its plain and ordinary sense, and the policy must be read in its entirety." *St. John*, 106 A.3d at 14.

Travelers asserts that it is entitled to judgment on the pleadings for several reasons. Travelers argues that Windber is not entitled to Business Income coverage or Extra Expense coverage because Windber has not alleged facts to satisfy an express prerequisite to coverage. (ECF No. 10 at 2). Travelers further contends that Windber is not entitled to coverage under the Civil Authority provisions because Windber has not established the express prerequisites to coverage. (*Id.*). Travelers also argues that Windber has not satisfied the prerequisites for coverage under the Ordinance or Law – Communicable Disease Contamination Coverage of the policy. (*Id.* at 3–4). Calling the Virus Exclusion "case-dispositive" (ECF No. 11 at 2), Travelers contends that it precludes coverage under the Civil Authority provision, Business Income provision, and Extra Expense provision of the Policy, as well as the rest of the coverage provisions of the Policy. (*Id.* at 1–2). Based upon these arguments, Travelers contends that Windber's causes of action for declaratory judgment and injunctive relief fail and, therefore, the putative class allegations also fail. (*Id.*).

Windber responds that it "is entitled to coverage both under the 'Business Income' insuring agreement in the policy, and under the 'Civil Authority' insuring agreement in the policy." (ECF No. 24 at 2). Further, Windber contends that "no exclusion eliminates the coverage that Windber is seeking, namely the coverage for 'continuing normal operating expenses.'" (*Id.*).

### a. Business Income Coverage and Extra Expense Coverage

Travelers contends that Windber has not met the requirements for Business Income coverage or Extra Expense coverage because Windber has not alleged and cannot allege "any facts demonstrating that [Windber] suffered a 'direct physical loss of or damage to property and [insured] premises." (ECF No. 10 at 2) (second alteration in original). In response, Windber argues that its "suspension of operations was caused both by a direct physical loss of and by direct physical damage to property," entitling it to coverage under the Business Income provision. (ECF No. 24 at 5–18). In reply, Travelers first argues that the Complaint fails to plead the direct physical loss of or damage to property at the insured premises. (ECF No. 30 at 8–13). Next, Travelers contends that Windber's interpretation of the policy "is contrary to the basic principle of Pennsylvania insurance law." (*Id.* at 13–14). Finally, Travelers asserts that "Windber has not alleged a Covered Cause of Loss." (*Id.* at 14–16).

The Policy provides that Travelers will pay for the actual loss of Business Income sustained and the actual Extra Expense incurred "caused by direct physical loss of or damage to the covered property" during the period of restoration. (ECF No. 1-2 at 57). The period of restoration is defined by the Policy as "the period of time after direct physical loss of or damage to Covered Property from a Covered Cause of loss" beginning immediately or after the applicable waiting period and ending when "on the earlier of: (1) The date when the Covered Property should be repaired or replaced with reasonable speed and similar quality; or (2) The date when business operations resume." (*Id.* at 130).

The Third Circuit has held that "[i]n ordinary parlance and widely accepted definition, physical damage to property means a distinct, demonstrable, and physical alteration of its

structure. Fire, water, or smoke and impact from another object are typical examples of physical damage from an outside source that may demonstrably alter the components of a building and trigger coverage." *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002).

In *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, the court considered whether the plaintiff's claim for losses due to COVID-19 was the result of a direct or indirect physical damage or loss. No. CV 20-3198, 2020 WL 654589 (E.D. Pa. Nov. 6, 2020). The *Handel* court explained that while interpreting Pennsylvania law, the Third Circuit has previously found that "'direct physical loss of or damage to' the property means that the functionality of the property 'was nearly eliminated or destroyed' or the 'property was made useless or uninhabitable.'" *Id.* at *3 (quoting *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 826 (3d Cir. 2005)). The court found that because the "property remained inhabitable and usable, albeit in limited ways [the p]laintiff ha[d] failed to plead plausible facts that COVID-19 caused damage or loss in any physical way to the property so as to trigger coverage as set forth in *Hardinger*." *Id.* (citing *Hardinger*, 131 F. App'x at 826–27). Similarly, the court in *Whiskey Flats Inc. v. Axis Ins. Co.* determined that while the "'loss of' the premises can mean the loss of use, that loss of use must be tied to a physical condition actually impacting the property, which [was] not satisfied here." No. CV 20-3451, 2021 WL 534471, at *4 (E.D. Pa. Feb. 12, 2021). The court in *ATCM Optical, Inc. v. Twin City Fire Ins. Co.*, agreed and "adopt[ed] our sister court's conclusion that, 'under Pennsylvania law, for Plaintiffs to assert an economic loss resulting from their inability to operate their premises as intended within the coverage of the Policy's physical loss provision, the loss and the bar to operation from which it results must bear a causal relationship to some *physical condition* of the premises.'" No. CV 20-

4238, 2021 WL 131282, at *5 (E.D. Pa. Jan. 14, 2021) (quoting *4431, Inc. et al. v. Cincinnati Ins. Cos.*, No. 5:20-cv-04396, 2020 WL 7075318, at *11 (E.D. Pa. Dec. 3, 2020) (emphasis in original)).

Here, Windber lost the use of its property because of the Orders enacted by Governor Wolf. Further, there is no allegation that Windber's property was uninhabitable. "It did not lose use because the premises suffered physical damage. [Thus,] Business Income coverage does not apply." *Toppers*, 2020 WL 7024287 at *3. Accordingly, because the claimed loss is not related to the physical condition of the property, the Court finds that Windber is not entitled to coverage under the Business Income or Extra Expense provisions of the Policy.

### b. Civil Authority Coverage

Travelers also argues that Windber has not met the express prerequisites to coverage under the Civil Authority provision because Windber has not and cannot allege facts to show "that access to the area surrounding and including [Windber]'s premises was prohibited by a civil authority as a result of damage to property other than property at the insured premises." (ECF No. 10 at 2). In response, Windber contends it has met all of the requirements for coverage under the Civil Authority provision, namely:

> (1) the operations were suspended because of the "action of civil authority that prohibits access to the" insured premises; (2) the civil authority's denial of access constituted a "response to dangerous physical condition resulting from the damage or continuation of the Covered Cause of Loss that causes the damage"; (3) there has been damage to property "other than property" at the insured premises (but within one hundred miles of the insured premises); and (4) access was also prohibited near the damaged property.

(ECF No. 24 at 18–19) (quoting Policy, ECF No. 1-2 at 58–59, footnote omitted). In reply, Travelers first asserts that Civil Authority coverage does not apply because Windber does not allege that there was a complete prohibition of access to the insured premises. (ECF No. 30 at 5–6). Second,

Travelers argues that the Orders were not issued based upon actual or anticipated physical damage to property but were instead issued as a result of the COVID-19 virus. (*Id.* at 6–8).

For the Policy's Civil Authority provision to apply, there must be both "damage to property other than property at the described premises" and "[a]ccess to the area immediately surrounding the damage is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than 100 miles from the damaged property." (ECF No. 1-2 at 58–59).

The Court finds that Windber has failed to satisfy the requirements for Civil Authority coverage under either requirement. There was not damage to any surrounding properties, there was only the Governor's Orders and the COVID-19 pandemic. *See Whiskey Flats*, 2021 WL 534471 at *4 ("Whiskey Flats did not close because of damage to a nearby property or because there was some dangerous physical condition at another nearby property. It closed because the Shutdown Orders applied to its own operations. Thus, its shutdown and resulting losses fall outside the scope of the Civil Authority coverage."). Further, there was not a complete prohibition on access to Windber's property as a result of damage to a surrounding property, there was no physical damage at all. Therefore, Windber is not entitled to coverage under the Civil Authority provision of the Policy. *See 1 S.A.N.T.*, 2021 WL 147139; *Toppers*, 2020 WL 7024287; *Handel*, 2020 WL 6545893.

### c. Ordinance or Law – Communicable Disease Contamination Coverage

Travelers further argues that the "[c]omplaint does not allege facts that would establish any of th[e] . . . prerequisites for" coverage under Ordinance or Law – Communicable Disease Contamination Coverage. (ECF No. 10 at 3). Windber does not address this argument in its response. Windber has not alleged, and there is no indication that its "premises [were]

contaminated by a 'communicable disease.'" (ECF No. 1-2 at 78). Accordingly, and after consideration of the pleadings, and the arguments presented by Travelers that were not responded to by Windber, the Court finds that Windber is not entitled to coverage under this provision of the Policy.

### d. The Virus Exclusion[5]

Even if Windber could initially establish entitlement to coverage under the Policy, it would not be able to recover if an express exclusion applied. Travelers contends that the Virus Exclusion precludes coverage under the Civil Authority provision, the Business Income provision, and the Extra Expense provision of the Policy. (*Id.* at 2–3).

In response, Windber argues that the Virus Exclusion does not exclude coverage for its "Continued Operating Expenses." (ECF No. 24 at 25–31). Further, Windber expressly states that the only coverage it is seeking is coverage for continuing normal operating expenses. (*Id.* at 2). Additionally, "Windber is not seeking coverage for any other benefit, such as lost profits." (*Id.*, n. 4).

In reply, Travelers asserts that "[t]here is no separate, self-standing coverage for 'continued normal operating expenses' independent of a claim for 'loss or damage'" and instead, "the Policy's reference to continuing normal operating expenses is simply part of the method of calculation of the amount of a covered Business Income loss where the Policy provides coverage." (ECF No. 30 at 4–5) (emphasis omitted).

---

[5] The language of the Virus Exclusion "applies to all coverage under all forms and endorsements" of the policy. (ECF No. 1-2 at 137). Therefore, the Virus Exclusion is directly applicable to both Business Income provision and the Civil Authority provision of the Policy, the two specific provisions of the Policy that Windber contends it is entitled to coverage under. Accordingly, the discussion of the Virus Exclusion applies to all coverage provisions of the Policy.

The Virus Exclusion of the Policy provides an express exclusion whereby Travelers "will not pay for loss or damage caused directly or indirectly by . . . [a]ny virus bacterium, or other microorganism that induces or is capable of inducing physical distress, illness, or disease." (ECF No. 1-2 at 36–39). An Endorsement to the Policy provides that the "terms of the exclusion . . . or the inapplicability of the exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy." (*Id.* at 137).[6]

The Court finds that the Virus Exclusion applies to Windber's claims and, therefore, the Virus Exclusion forecloses coverage under the Policy. COVID-19 is a "virus . . . that induces or is capable of inducing physical distress, illness, or disease." (ECF No. 1-2 at 38); (ECF No. 1 at ¶¶ 12–16); *see Toppers*, 2020 WL 7024287 at *3. Therefore, any "loss or damage caused directly or indirectly" (ECF No. 1-2 at 36) by COVID-19 is excluded from coverage under the Policy.

In *Toppers*, the plaintiff's insurance policy contained a nearly identical Virus Exclusion and the plaintiff made an argument nearly identical to the argument made by Windber. 2020 WL 7024287 at *3. The *Toppers* plaintiff argued "that the exclusion d[id] not extend to claims for continuing expenses because those expenses [were] not a 'loss' or a 'damage.'" *Id.* The *Toppers* court found that the "argument ignore[d] both the Policy's language and structure." *Id.* The *Toppers* court further determined that the Virus Exclusion barred coverage and that "[b]oth the failure to collect income and the payment of continued expenses fall with the[] definitions of 'loss.'" *Id.*

---

[6] The exclusion also supersedes any exclusion relating to pollutants. (ECF No. 1-2 at 39).

Windber argues that the Virus Exclusion does not apply because "[c]overage under the policy . . . is not limited to 'loss or damage.' Coverage also exists for 'continuing normal operating expenses.'" (ECF No. 24 at 25–26). Windber further argues that continuing normal operating expenses such as paying rent, mortgage, and employees are not loss or damage excluded from coverage under the Policy. (*Id.* at 26). Travelers replies that there is not a freestanding claim for the coverage of continuing normal operating expenses and the reference to those expenses is the method for calculating the amount of Business Income. (ECF No. 30 at 4–5).

The Policy provides that Travelers will pay for, *inter alia*, the "actual loss of Business Income." (ECF No. 1-2 at 57). As set forth in the policy, "Business Income means the sum of the: (1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; plus (2) Continuing normal operating expenses incurred, including payroll." (*Id.*). Therefore, if the Virus Exclusion applies then this actual loss of Business Income is excluded from coverage. (*Id.* at 36–39, 137).

Windber contends that its normal continuing operating expenses are a business expense, not a loss or damage excluded from coverage by the Virus Exclusion. (ECF No. 24 at 26). However, this argument overlooks what the Virus Exclusion excludes, in this case the actual loss of Business Income. Calculating Business Income requires both net income and continuing normal operating expenses. (ECF No 1-2 at 57). These two numbers make up the Business Income that the Policy covers, and that are excluded from coverage by the Virus Exclusion. (*Id.*). Therefore, because normal continuing operating expenses are part of Business Income, and because the loss of Business Income is excluded from coverage by the Virus Exclusion, Windber's

claim for continuing normal operating expenses is excluded from coverage by the Virus Exclusion. *See Toppers*, 2020 WL 7024287, at *3 ("These provisions, read as a whole, demonstrate that the parties intended the term 'loss' to extend to all types of Business Income, including covered expenses.").

Windber's argument seeks to create a separate, freestanding claim for continuing normal operating expenses. However, such a claim conflicts with the structure of the Policy whereby the coverage of continuing normal operating expenses is part of the Business Income coverage that is expressly excluded by the Virus Exclusion. *See id.* ("the goal in interpreting an insurance policy, 'as with interpreting any contract, is to ascertain the parties' intentions, as manifested by the policy's terms") (quoting *Kvaerner Metals Div. of Kvaerner, U.S. v. Commercial Union Ins. Co.*, 589 Pa. 317, 908 A.2d 888, 897 (Pa. 2006)). Accordingly, the Court finds that Windber's claim for coverage of normal continuing operating expenses is expressly precluded from coverage under the Policy by the Virus Exclusion.

### IV.  Conclusion

For the reasons set forth above, the Court finds that Windber is not entitled to coverage under the Policy. Even if Winder had established an initial right to coverage, the Virus Exclusion bars Windber's claim for coverage under any and all provisions of the Policy. Accordingly, Travelers is entitled to judgment on the pleadings. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WINDBER HOSPITAL d/b/a CHAN SOON SHIONG MEDICAL CENTER, *on behalf of itself and all others similarly situated,* | ) ) ) ) ) | Case No. 3:20-cv-80 |
| Plaintiff, | ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) | |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) ) ) | |
| Defendant. | ) | |

### ORDER

AND NOW, this 18th day of March, 2021, upon consideration of "Defendant Travelers Property Casualty Company of America's Motion for Judgment on the Pleadings" (ECF No. 10), and for the reasons set forth in the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that said Motion is **GRANTED**.

The Clerk of the Court is directed to close this matter.

BY THE COURT:

_Kim R. Gibson_
**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**